

FILED

APR 22 2016

NOT FOR PUBLICATION

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | |
|---|---|
| In re: ) | BAP No.   EC-14-1581-KuDTa |
| ) | |
| DARRYL CHADWICH CARTER, ) | Bk. No.   13-34802 |
| ) | |
| Debtor. ) | Adv. No.   14-02144 |
| _____ ) | |
| DARRYL CHADWICH CARTER, ) | |
| ) | |
| Appellant, ) | |
| ) | |
| v. ) | **MEMORANDUM**[*] |
| ) | |
| RON L. BARBER, ) | |
| ) | |
| Appellee.[**] ) | |
| _____ ) | |

Submitted Without Oral Argument
on March 17, 2016

Filed – April 22, 2016

Appeal from the United States Bankruptcy Court
for the Eastern District of California

Honorable David E. Russell, Bankruptcy Judge, Presiding

_____

Appearances:    Appellant Darryl Chadwich Carter, pro se, on
                brief.

_____

Before: KURTZ, DUNN and TAYLOR, Bankruptcy Judges.

_____

[*]This disposition is not appropriate for publication.
Although it may be cited for whatever persuasive value it may
have (see Fed. R. App. P. 32.1), it has no precedential value.
See 9th Cir. BAP Rule 8024-1.

[**]Appellee Ron L. Barber neither appeared nor participated
in this appeal.

**INTRODUCTION**

Former chapter 13[1] debtor Darryl Chadwich Carter appeals from the bankruptcy court's judgment on his complaint seeking sanctions for an alleged violation of the automatic stay. The judgment denied Carter's requests for injunctive relief, emotional distress damages, punitive damages and attorney's fees.

Carter's appeal from the bankruptcy court's denial of injunctive relief is moot. The activity he sought to enjoin, the continuation of a state court unlawful detainer proceeding, has been completed. Consequently, we cannot offer Carter any meaningful or effective relief with respect to that ruling even if we were to conclude that the bankruptcy court erred in denying Carter injunctive relief.

On the other hand, the bankruptcy court's ruling on damages still presents a live controversy, and the bankruptcy court erred in making that ruling. In the process of making the ruling, the bankruptcy court denied Carter the opportunity to present his own testimony regarding the damages he suffered as a result of the stay violation.

Furthermore, the ruling was based on the incorrect premise that Barber's willful stay violation was limited to a very short period of time, during which little occurred in the unlawful detainer action. The ruling did not account for the fact that the filing of the unlawful detainer action and service of the

---

[1]Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532, and all "Rule" references are to the Federal Rules of Bankruptcy Procedure, Rules 1001-9037. All "Civil Rule" references are to the Federal Rules of Civil Procedure.

2

summons and complaint both occurred before the bankruptcy court granted the unlawful detainer plaintiff, Ron L. Barber, relief from the automatic stay. As a result, the acts of filing and serving the complaint were stay violations and were void ab initio.

Barber was under a continuing duty to rectify his stay violations once he learned of Carter's bankruptcy case. Barber indisputably was aware of the case by no later than June 6, 2014, when he signed and filed a declaration in support of his motion for relief from stay. But Barber never remedied his stay violations, nor did he ever seek annulment of the stay to retroactively validate the violative actions he took in the unlawful detainer action.

Accordingly, we DISMISS as moot the portion of this appeal challenging the bankruptcy court's denial of injunctive relief. The remainder of the bankruptcy court's judgment is VACATED, and we REMAND with the instruction that the bankruptcy court give both sides the opportunity to further develop the record on the questions of causation, actual damages and punitive damages. When the court next considers Carter's damages claims, it should keep in mind that Barber's willful stay violation began no later than June 6, 2014 (perhaps earlier) and did not end when the bankruptcy court granted Barber relief from stay, as the bankruptcy court ruled.

**FACTS**

Carter commenced his chapter 13 bankruptcy case in November 2013. In or around May 2014, Carter failed to make his residential rent payment, so his landlord, Barber, commenced an

3

unlawful detainer action in the Solano County Superior Court on May 13, 2014.

There is no evidence in the record that Barber had notice or knowledge of Carter's bankruptcy filing at the time the unlawful detainer action was commenced. Carter did not include Barber, or Barber's property management company, or any of the property management company's employees on his bankruptcy mailing list or on the schedules he filed with his bankruptcy petition.

The record suggests that Barber might have learned of Carter's bankruptcy filing as early as mid-May 2014, from papers Carter filed in the unlawful detainer action, in which Carter argued that the filing and service of the unlawful detainer complaint violated the Bankruptcy Code and the automatic stay.

In any event, Barber definitely knew about the bankruptcy filing (and the automatic stay) by no later than early June 2014, because he filed in the bankruptcy court on June 6, 2014, a motion to modify the automatic stay to permit him to pursue his rights under state law to recover possession of the leased premises from Carter. The relief from stay motion was accompanied by Barber's personal declaration, also dated June 6, 2014.

Notably, the relief from stay motion did not seek to annul the stay in order to retroactively validate Barber's filing and service of the unlawful detainer complaint, which both took place in May 2014. In fact, none of Barber's moving papers, including his personal declaration, even mentioned the actions Barber had taken in violation of the stay in May 2014. Without any knowledge of the pending unlawful detainer action, the bankruptcy

4

court entered an order on June 30, 2014 granting Barber relief from the stay to permit him to take steps to obtain possession of the property. Pursuant to Rule 4001(a)(3), that order became effective on July 14, 2014.

Meanwhile, on May 28, 2014, Carter filed, in pro se, an adversary complaint against Barber for violation of the automatic stay, seeking injunctive relief, actual damages, emotional distress damages, punitive damages and attorney's fees. While not artfully pled, Carter did allege in the complaint that "Defendant Barber improperly brought his UD action in violation of the stay" and that "Barber sought continuation in the [unlawful detainer] action despite Carter's contentions for dismissal of the action." Complaint (May 28, 2014) at ¶¶ 22, 24. Immediately following this allegation, Carter cited Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210 (9th Cir. 2002), for the proposition that "'sanctions were appropriate under 11 U.S.C. § 362(h) [now § 362(k)] because Eskanos knew of the bankruptcy filing on September 6, 2000, and unjustifiably delayed in dismissing the state action until September 29, 2000.'" Complaint (May 28, 2014) at ¶ 24.

According to the proof of service Carter filed in the bankruptcy court, Carter served Barber and the Barber trust at two addresses, one in Alamo, California and the other in Fairfield, California.[2] When Barber failed to respond to the

---

[2]These are the same two addresses that Carter listed in his notice of appeal for Barber. Carter apparently obtained these two addresses for Barber from exhibits that Barber filed in support of his relief from stay motion.

adversary complaint, Carter requested and obtained entry of default and then filed a motion for entry of default judgment. Carter's default judgment motion was accompanied by a declaration and exhibits. While the evidence was thin, there were at least some statements in his declaration regarding the emotional distress he claims to have suffered and at least one of the exhibits submitted therewith suggests that Carter was treated for depression throughout the course of the unlawful detainer proceedings. At the first hearing on the default judgment motion, the bankruptcy court ruled that Carter had pled a sufficient claim for relief for violation of the automatic stay. According to the court, "[Barber's] willful violation of 11 U.S.C. § 362(a) . . . occurred between May 14, 2014 and July 14, 2014." Civil Minutes (Oct. 7, 2014), at p. 1. In addition, the bankruptcy court continued the matter for an evidentiary hearing so that Carter could give evidence to "prove up" his damages.

However, at the final hearing, the bankruptcy court did not allow Carter (again, appearing in pro se) to present any testimony. The court apparently did permit Carter to present a package of exhibits containing at least some evidence regarding the amount of Carter's alleged damages, but the court was convinced that Carter did not incur much in the way of actual damages or emotional distress damages. Nor did the bankruptcy court see any evidence reflecting egregious conduct or any other type of conduct that might justify punitive damages.

Carter attempted to persuade the bankruptcy court that the entire prosecution of the unlawful detainer action was a

6

violation of the automatic stay. Among other things, Carter asserted that "[e]verything associated with this case as well as the initiation of the unlawful detainer in the state court" was predicated on a violation of the automatic stay. Hr'g Tr. (Dec. 5, 2014) at 24:18-25:7. But the bankruptcy court opined, in response, that the willful stay violation was of very limited duration and that not much occurred during that time period – other than service of the unlawful detainer complaint. According to the court, the stay violation ceased as soon as Barber obtained relief from the automatic stay. Hr'g Tr. (Dec. 5, 2014) at 25:1-13.

Having reviewed Carter's exhibits, the bankruptcy court concluded that Carter was entitled to a default judgment of no more than $500. The bankruptcy court entered judgment in Carter's favor in the amount of $500, and Carter timely appealed.

## JURISDICTION

The bankruptcy court had "arising under" jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(1). See Aheong v. Mellon Mortg. Co (In re Aheong), 276 B.R. 233, 244 (9th Cir. BAP 2002). We have jurisdiction under 28 U.S.C. § 158.

## ISSUE

Did the bankruptcy court correctly consider and assess Carter's damages claims allegedly arising from Barber's willful stay violation?

## STANDARDS OF REVIEW

We review for an abuse of discretion the amount of damages awarded under § 362(k) for a willful violation of the automatic stay. See Eskanos & Adler, P.C., 309 F.3d at 1213.

7

The bankruptcy court abused its discretion if it applied an incorrect legal standard or its findings of fact were illogical, implausible or without support in the record. United States v. Hinkson, 585 F.3d 1247, 1262 (9th Cir. 2009) (en banc).

**DISCUSSION**

**1. The appeal from the denial of injunctive relief is moot.**

A claim for relief becomes constitutionally moot when "the issues presented are no longer 'live' or the parties lack a legally cognizable interest in the outcome." Murphy v. Hunt, 455 U.S. 478, 481 (1982). In the context of appellate review, "an appeal is moot if no present controversy exists as to which an appellate court can grant effective relief." Vegas Diamond Props., LLC v. F.D.I.C., 669 F.3d 933, 936 (9th Cir. 2012).

Carter has admitted that the unlawful detainer action no longer is pending and that he no longer is in possession of the leased premises. More to the point, the acts Carter sought to enjoin – Barber's continued prosecution of the state court unlawful detainer action – already have been completed. Given the nature and scope of Carter's adversary complaint, the scope of this appeal, and the completion of the acts Carter sought to enjoin, we cannot provide any meaningful relief to Carter. "This action is moot because the activities sought to be enjoined have already occurred and can no longer be prevented." Id.; see also Center For Biological Diversity v. Lohn, 511 F.3d 960, 963-64 (9th Cir. 2007); Seven Words LLC v. Network Solutions, 260 F.3d 1089, 1095 (9th Cir. 2001). In short, the portion of Carter's appeal seeking review of the bankruptcy court's denial of injunctive relief is moot.

8

**2. The bankruptcy court's damages analysis incorrectly presumed that Barber's willful stay violation ended when the order granting relief from the automatic stay became effective.**

Upon the commencement of Carter's bankruptcy case, a stay automatically went into effect that, in relevant part, enjoined all entities from engaging in "any act to obtain possession of property of the estate or of property from the estate or to exercise control over property of the estate . . . ." 11 U.S.C. § 362(a)(3); see also State of Cal. Emp. Dev. Dep't v. Taxel (In re Del Mission Ltd.), 98 F.3d 1147, 1151 (9th Cir. 1996). As we previously have explained:

> The scope of the automatic stay is quite broad, and is designed to immediately maintain the status quo by precluding and nullifying postpetition actions, whether judicial or nonjudicial, in nonbankruptcy forums against the debtor and property of the estate. Exceptions to the automatic stay are read narrowly, and actions taken in violation of the stay are void rather than voidable.

Dunbar v. Contractors' State License Bd. of Cal. (In re Dunbar), 235 B.R. 465, 470-71 (9th Cir. BAP 1999) (citations omitted), aff'd, 245 F.3d 1058 (9th Cir. 2001). The voidness of acts and judicial proceedings pursued in violation of the stay is a critical feature of one of the most important provisions of the Bankruptcy Code, because it helps to ensure that the stay is self-executing. See Gruntz v. County of Los Angeles (In re Gruntz), 202 F.3d 1074, 1081-82 (9th Cir. 2000) (en banc).

For voidness purposes, it makes no difference whether the stay violator was aware of the stay when he or she violated the stay. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1188 (9th Cir. 2003). Regardless, all acts and judicial proceedings undertaken in violation of the stay are void. In re Gruntz,

9

202 F.3d at 1082.

Frequently, there is a disconnect between the violative acts on the one hand and the formal acknowledgment and effectuation of their voidness on the other hand. See, e.g., In re Dyer, 322 F.3d at 1192; Eskanos & Adler, P.C., 309 F.3d at 1214-15; In re Del Mission Ltd., 98 F.3d at 1151-52. When this occurs, the stay violation is continuing, and it is incumbent on the stay violator to take affirmative steps to remedy the stay violation by attempting to unwind the violative acts or proceedings. See Sternberg v. Johnston, 595 F.3d 937, 944-45 (9th Cir. 2010) (as amended), partially overruled on other grounds by, America's Servicing Co. v. Schwartz-Tallard (In re Schwartz-Tallard), 803 F.3d 1095 (9th Cir. 2015) (en banc); In re Dyer, 322 F.3d at 1192; In re Del Mission Ltd., 98 F.3d at 1151-52.

If the stay violator knows of the bankruptcy case but fails to take affirmative steps to unwind the violative acts or proceedings, he or she is willfully violating the automatic stay. Sternberg, 595 F.3d at 945; In re Dyer, 322 F.3d at 1192; Eskanos & Adler, P.C., 309 F.3d at 1215.

Here, Barber knew of Carter's bankruptcy case and knew about the automatic stay, at the very latest, when he prepared and filed his relief from stay motion in early June 2014. It also is quite possible that Barber knew of the bankruptcy case and the stay two or three weeks earlier – in mid-May 2014 – after Carter filed papers in the unlawful detainer action complaining that the unlawful detainer action violated the Bankruptcy Code and § 362. Sternberg, Dyer and Eskanos all stand for the proposition that, once Barber knew of the stay, his failure to take affirmative

10

steps to remedy the acts he took in violation of the stay constituted a continuing willful violation of the stay.

The Bankruptcy Code does provide an "out" for inadvertent stay violators facing the threat of damages for willful violation of the stay if they don't unwind the effects of their inadvertent stay violations:  the stay violator may file a motion to annul the stay under § 362(d).  Such motions, in effect, seek retroactive stay relief so as to validate actions that otherwise would be void as stay violations.  See Schwartz v. United States (In re Schwartz), 954 F.2d 569, 573 (9th Cir. 1992).

We previously have examined the standards for granting annulment of the stay,[3] but we need not linger on those standards here.  Barber filed a relief from stay motion in the bankruptcy court in June 2014, but he never requested annulment of the stay in order to retroactively validate the void acts he took in May 2014 to recover possession of the leased property from Carter. These actions included the filing and service of his unlawful detainer complaint.  These actions also included Barber's attempted termination of Carter's leasehold interest for non-payment of rent.

Additionally, Barber neglected to disclose in his relief from stay motion that he had filed and served his unlawful detainer complaint in violation of the stay.  If Barber had disclosed these facts to the bankruptcy court, we are convinced the bankruptcy court either would have directed Barber to amend

---

[3]See, e.g, Gasprom, Inc. v. Fateh (In re Gasprom, Inc.), 500 B.R. 598, 607 (9th Cir. BAP 2013); Fjeldsted v. Lien (In re Fjeldsted), 293 B.R. 12, 25 (9th Cir. BAP 2003).

11

his relief from stay motion to seek annulment of the stay or would have denied the relief from stay motion to the extent Barber was seeking permission to proceed with the unlawful detainer action he commenced in violation of the stay.

Under § 362(k)(1), ". . . an individual injured by any willful violation of a stay provided by this section shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." Those actual damages should include costs and attorney's fees, as well as emotional distress damages, provided that the injured individual proves, among other things, that the stay violation caused his or her damages. See Dawson v. Wash. Mutual Bank, F.A. (In re Dawson), 390 F.3d 1139, 1149 (9th Cir. 2004) (holding that injured individual has burden of proof to establish both causation and damages). And to recover punitive damages, the injured individual must prove the stay violator's "reckless and callous disregard for the law or the rights of others" or make a showing of "malicious, wanton, or oppressive" conduct. Snowden v. Check Into Cash of Wash. Inc. (In re Snowden), 769 F.3d 651, 657 (9th Cir. 2014)

Here, the bankruptcy court essentially ruled that Carter could not possibly prove actual damages in excess of $500, nor any emotional distress or punitive damages, because virtually nothing of significance happened during the short span of time that Barber was in willful violation of the stay. However, the court's damages assessment did not account for the fact that Barber's willful stay violation (and hence his potential exposure for damages under § 362(k)(1)) did not end when the court granted

12

Barber relief from the stay. At that time, Barber had neither obtained an annulment of the stay nor otherwise remedied his stay violation.

We note that the documentary evidence Carter was prepared to present on the issues of causation and damages was very thin. Furthermore, we did not see much evidence in the record that might demonstrate the type of conduct from which punitive damages might arise. Nonetheless, we do not know what Carter might have said if the court had given him the chance to testify at the final evidentiary hearing. The bankruptcy court preempted his evidentiary presentation based on its incorrect view regarding the limited duration of Barber's willful stay violation. On remand, both sides should be given the opportunity to further develop the record on the issues of causation, actual damages (including emotional distress damages) and punitive damages.

One issue that does not need to be addressed on remand is the issue of attorney's fees. Pro se litigants cannot recover attorney's fees as an item of actual damages in an action under § 362(k). See In re Figuera, 2014 WL 4923078, at *10 (Bankr. E.D. Cal. July 28, 2014) (citing Elwood v. Drescher, 456 F.3d 943, 947–48 (9th Cir. 2006)).

**CONCLUSION**

For the reasons set forth above, we DISMISS as moot the portion of this appeal challenging the bankruptcy court's denial of injunctive relief. The remainder of the bankruptcy court's judgment is VACATED, and we REMAND with the instruction that the bankruptcy court give both sides the opportunity to present additional evidence on the questions of causation, actual damages

13

(including emotional distress damages) and punitive damages. Additionally, when the court next considers Carter's damages claims, it should keep in mind that Barber's willful stay violation began no later than June 6, 2014 (perhaps earlier) and did not end when the bankruptcy court granted Barber relief from the stay.