FILED

APR 15 2014

SUSAN M. SPRAUL, CLERK
U.S. BKCY. APP. PANEL
OF THE NINTH CIRCUIT

NOT FOR PUBLICATION

**UNITED STATES BANKRUPTCY APPELLATE PANEL**

**OF THE NINTH CIRCUIT**

| | | |
|---|---|---|
| In re: | ) | BAP No. CC-13-1419-TaDKi |
| | ) | |
| MARIA JUANA DUARTE, | ) | Bk. No. 12-24527-MW |
| | ) | |
| Debtor. | ) | |
| _____ | ) | |
| | ) | |
| MARIA JUANA DUARTE, | ) | |
| | ) | |
| Appellant, | ) | |
| | ) | |
| v. | ) | **MEMORANDUM**[*] |
| | ) | |
| NATIONSTAR MORTGAGE, LLC and | ) | |
| QUALITY LOAN SERVICE CORP., | ) | |
| | ) | |
| Appellees. | ) | |
| _____ | ) | |

Argued and Submitted on March 20, 2014
at Pasadena, California

Filed - April 15, 2014

Appeal from the United States Bankruptcy Court
for the Central District of California

Honorable Mark S. Wallace, Bankruptcy Judge, Presiding

_____

Appearances:     Hector C. Perez, Esq. for Appellant Maria Juana Duarte; Adam N. Barasch, Esq. of Severson & Werson for Appellee Nationstar Mortgage, LLC; and Melissa Robbins Coutts, Esq. of McCarthy & Holthus, LLP for Appellee Quality Loan Service Corporation.

_____

Before: TAYLOR, DUNN, and KIRSCHER, Bankruptcy Judges.

[*] This disposition is not appropriate for publication. Although it may be cited for whatever persuasive value it may have (see Fed. R. App. P. 32.1), it has no precedential value. See 9th Cir. BAP Rule 8013-1.

## INTRODUCTION

Appellant, chapter 7 Debtor Maria Juana Duarte, appeals from the bankruptcy court's denial of her motion seeking damages for violations of the § 362[1] automatic stay. She based her motion on the postpetition foreclosure sale of her home. The bankruptcy court found, however, that the violation was not willful as neither of the Appellees had appropriate notice of Debtor's bankruptcy filing before the foreclosure sale went forward. The bankruptcy court also found that Debtor failed to establish any entitlement to damages under § 362(k) where Appellees, upon learning of the filing, took immediate corrective action. We AFFIRM.

## FACTS

Appellee Nationstar Mortgage, LLC ("Nationstar") is the beneficiary of a deed of trust recorded against Debtor's home. Appellee Quality Loan Service Corporation ("Quality") is the substituted trustee under the deed of trust. Due to mortgage defaults, Quality noticed a trustee's sale of Debtor's home for December 28, 2012, at 12:00 p.m. At 11:48 a.m. on the scheduled sale date, Debtor filed a skeletal bankruptcy petition which did not list Nationstar as a creditor. At 11:52 a.m. she sent notice of the filing by facsimile to Quality. The foreclosure sale, however, went forward on the courthouse steps at 12:10 p.m. Nationstar was the highest bidder through a credit bid.

In her bankruptcy case, Debtor moved for rescission of the foreclosure and recovery of damages under § 362(k) for Appellees'

---

[1] Unless specified otherwise, all chapter and section references are to the Bankruptcy Code, 11 U.S.C. §§ 101-1532.

- 2 -

violation of the automatic stay ("Sanctions Motion").[2] Debtor argued that Appellees received effective facsimile notice of the bankruptcy filing on the day of sale, but nonetheless proceeded with the foreclosure, and, thus, willfully violated the automatic stay. Debtor also alleged that at an unspecified time Quality acknowledged notice of the bankruptcy filing.

Debtor alleged in a declaration that as a result of the foreclosure she no longer owned her home.[3] She also alleged that post-foreclosure she "received a request for property occupancy" and condition information from Appellees' agents. ECF No. 62-1 at 3. To support this allegation, she filed a copy of a "Notice" and a business card of Victor Vasu, Executive Director of The Vasu Preferred Team. Debtor's counsel's paralegal alleged that in response to this Notice, he called Quality, told them about the information request, and obtained acknowledgment that the sale violated the stay as well as a promise to rescind the foreclosure. Debtor further alleged that Nationstar contacted her "to determine what [her] plans are to relocate now that the mortgage has been foreclosed upon,"[4] and that she received notices and telephone calls from "multiple businesses purporting

---

[2] The bankruptcy court granted this initial Sanctions Motion, based, in part, on lack of opposition by either Nationstar or Quality. The order was subsequently set aside on Nationstar's motion and after the bankruptcy court determined that Debtor failed to properly serve Nationstar and Quality. Debtor thereafter re-filed and served her Sanctions Motion, denial of which is at issue in this appeal.

[3] At oral argument in this appeal, Debtor's counsel conceded that title remained in Debtor's name.

[4] Debtor does not allege when this contact occurred or by what method.

to provide post foreclosure assistance." Id. She finally asserted that she never received a notice of rescission and argued that she should have.

As damages, Debtor alleged generally that she suffered "emotional distress, including increased heart palpitations, headaches, anxiety, sleeplessness, stomach aches, stress, and depression" as a result of Appellees' stay violation. Id. at 4. In addition, she alleged that she incurred $7,200 in attorney's fees for legal assistance to obtain rescission of the foreclosure and to file her bankruptcy petition.

Appellees opposed the Sanctions Motion, primarily on two grounds. First, they asserted that violation of the stay was not willful; Quality received the facsimile notice so close in time to the scheduled time of sale that Quality was not able to review it in time to stop a sale that took place at another location 18 minutes later. The record before the bankruptcy court contained unchallenged declaratory evidence from Quality's bankruptcy supervisor that on the day of the sale, she personally reviewed all the bankruptcy notices in the bankruptcy department's fax inbox, which averaged between 100 and 150 faxes per day. She testified that the notice of Debtor's filing showed that it came in at 11:53:58 a.m., and she attached a copy of the facsimile to her declaration. She further testified that she contacted the sales company after processing the information contained in the Debtor's facsimile, but that the sale had already been cried. She finally testified that at 12:59 p.m. that same day, she contacted Quality's foreclosure unit, advising them that the sale violated the stay and would need to be

- 4 -

rescinded.

Appellees also emphasized that upon review of the bankruptcy notice later that same day, and after recognizing that the sale was void, Quality took steps to rescind the sale and did not prepare or record a trustee's deed upon sale. Appellees argued that, as no trustee's deed upon sale was ever issued, the sale was not effective and an order of rescission was unnecessary. Appellees' evidence generally described in-house procedures and specifically identified call records and actions taken on the sale date and afterwards. Based on this evidence, Appellees argued that after the void sale, they committed no further violation of the automatic stay and that Debtor failed to prove otherwise.

As to communications allegedly received by Debtor, Appellees argued that Debtor failed to specify a date or time of the call allegedly confirming Quality's receipt of the bankruptcy notice. Quality provided evidence that its call records reflected that only one call was received, on January 3, 2013, days after the sale. And, as to other alleged notices, calls, and correspondence after foreclosure, Appellees argued that none of the activity was attributable to either of them and that Debtor's evidence did not show otherwise.

Appellees finally asserted that even if Debtor established that the stay violation was willful, she failed to prove recoverable damages. Appellees acknowledged that Debtor likely suffered emotional distress in the days that led to her bankruptcy and the foreclosure, but she did not establish any particular emotional distress caused by postpetition actions

taken by Appellees. As to recovery of attorney's fees, Appellees argued that, pursuant to Sternberg v. Johnson, 595 F.3d 937, 948 (9th Cir. 2010), attorney's fees incurred after remedy of the stay violation are not recoverable under § 362(k). Further, they noted that while Debtor failed to break down the attorney's fees by date incurred, the fee request included $3,953 more than the $3,000 amount claimed in the first Sanctions Motion and appeared to include fees and costs totally unrelated to the stay violation, such as fees to defend against Nationstar's motion to set aside the order on the first Sanctions Motion (for improper service) and Debtor's bankruptcy filing costs. The bankruptcy court issued a lengthy tentative ruling in advance of the hearing. In its tentative ruling, the bankruptcy court preliminarily found, in part, that:

> Neither Quality nor Nationstar [ ] had appropriate notice of Debtor's bankruptcy filing prior to the foreclosure sale. As soon as Quality determined the foreclosure sale had proceeded in violation of the automatic stay, the appropriate people within Quality were informed and no Trustee[']s Deed Upon Sale was ever produced. Neither Quality nor Nationstar have taken any further action in violation of the automatic stay. Aside from the foreclosure sale that occurred on December 28, 2012, Debtor has not provided any evidence of violations of the automatic stay. While Debtor claims to have received numerous telephone calls and correspondence from a business purporting to provide post-foreclosure assistance, these cannot be directly attributed to Nationstar or Quality. The only evidence submitted by Debtor regarding any of this correspondence is a one-page occupancy request notice delivered by a company called the Vatsu (sic) Preferred Team. Debtor has failed to present any supporting evidence to show that Quality and/or Nationstar willfully violated the automatic stay.

ECF No. 71 at 4.

After hearing oral argument, the bankruptcy court placed additional comments and findings on the record. It found that

Appellees "act[ed] pretty quickly" by voiding the sale within less than an hour, considering that facsimile notice was received only minutes before the lunch hour. Hr'g Tr. (July 29, 2013) at 14:21-25, 15:1-3. The bankruptcy court, thus, held that the short-lived stay violation was not the type of violation to "give rise to damages." Id. at 15:1. And even if it were, the bankruptcy court found that Debtor suffered no actual damages in the "intervening hour." Id. at 15:3. The bankruptcy court adopted its tentative ruling as its final ruling and denied the Sanctions Motion, with prejudice.

Debtor timely appealed.

**JURISDICTION**

The bankruptcy court had jurisdiction pursuant to 28 U.S.C. §§ 1334 and 157(b)(2). We have jurisdiction under 28 U.S.C. § 158.

**ISSUES**

1. Whether the bankruptcy court committed reversible error when it found that neither Nationstar nor Quality willfully violated the automatic stay.

2. Whether the bankruptcy court committed reversible error when it found that debtor failed to establish entitlement to any damages under § 362(k).

**STANDARD OF REVIEW**

We review the bankruptcy court's factual finding that a creditor did not willfully violate the automatic stay under the clearly erroneous standard. See Sternberg v. Johnston, 595 F.3d at 943; Ozenne v. Bendon (In re Ozenne), 337 B.R. 214, 218 (9th Cir. BAP 2006). A court's findings of fact are clearly erroneous

- 7 -

if they are illogical, implausible, or without support in the record. Retz v. Sampson (In re Retz), 606 F.3d 1189, 1197 (9th Cir. 2010).

We review the bankruptcy court's assessment of damages under § 362(k) for an abuse of discretion. See Sternberg, 595 F.3d at 945; Eskanos & Adler, P.C. v. Leetien, 309 F.3d 1210, 1213 (9th Cir. 2002).[5] We apply a two-part test to determine whether the bankruptcy court abused its discretion. First, we review de novo whether the bankruptcy court selected the correct legal standard to apply. United States v. Hinkson, 585 F.3d 1247, 1261-63 (9th Cir. 2009) (en banc). Second, if the bankruptcy court selected the correct legal standard, we consider whether the court's findings and its application of those findings to the correct legal standard were illogical, implausible or without support in the record. Id. at 1262.

## DISCUSSION

To find a willful stay violation, the bankruptcy court must conclude that the creditor knew of the bankruptcy filing and intended the actions that violated the stay. See Knupfer v. Lindblade (In re Dyer), 322 F.3d 1178, 1191 (9th Cir. 2003) (citing Pinkstaff v. United States (In re Pinkstaff), 974 F.2d 113, 115 (9th Cir. 1992)). In the event of a willful stay violation, an individual injured thereby "shall recover actual damages, including costs and attorneys' fees, and, in appropriate circumstances, may recover punitive damages." 11 U.S.C.

---

[5] As part of the Bankruptcy Abuse Prevention and Consumer Protection Act of 2005, Pub.L. 109-8, 119 Stat. 23, § 362(h) was redesignated as § 362(k).

§ 362(k)(1).

**A.      The bankruptcy court did not clearly err when it found that the foreclosure sale was not a willful violation of the automatic stay.**

The bankruptcy court and the parties acknowledged that the foreclosure sale violated the automatic stay. The bankruptcy court found, however, that the violation was not willful because, although the foreclosure sale was an intentional act, the facsimile notice sent by Debtor arrived less than 8 minutes before the scheduled sale and at the lunch hour. Quality, therefore, did not have actual or effective notice of the filing.

On appeal, Debtor argues that Appellees acted willfully by going forward with the sale when Quality received the facsimile notice a full 17 minutes before the sale was actually cried at 12:10 p.m.

We determine that the bankruptcy court's finding is not clearly erroneous. Based on this record, and, in particular on the evidence provided by Quality's bankruptcy supervisor, we determine that the bankruptcy court's finding is well supported by the record and is not illogical or implausible.

**B.      The bankruptcy court did not clearly err when it found that Appellees did not otherwise willfully violate the automatic stay.**

Even a non-willful stay violation becomes willful if the creditor fails to remedy the violation after receiving notice of the stay. See Eskanos & Adler, P.C., 309 F.3d at 1213 (section 362(a) imposes an affirmative duty to cease actions); Goodrich v. Union Planters Mortg. (In re Goodrich), 196 Fed. App'x. 586, 587 (9th Cir. 2006) (foreclosing lender has a duty to promptly rescind a trustee's deed of sale upon learning of the pre-sale

- 9 -

bankruptcy filing).

Debtor here testified that she never received notice of the rescission of the foreclosure. She also presented declaratory testimony from her attorney's paralegal, however, that Quality acknowledged the ineffectiveness of the foreclosure sale during a phone call. Appellees argued that because no trustee's deed upon sale ever issued or recorded, title did not transfer and the sale had no effect – citing without discussion California Civil Code §§ 1091 and 2924.

The bankruptcy court found that Appellees took steps to correct their wrongful sale and did so promptly after learning that Debtor filed bankruptcy. We determine that this finding is not clearly erroneous.

The Appellees' characterization of the effect of the trustee's deed of sale misinterprets the governing statute. Section 2924h(c) of the California Civil Code provides that for the purposes of finalizing a trustee's sale, "the sale shall be deemed final upon the acceptance of the last and highest bid." It then discusses perfection of the sale, which is based on recordation of the trustee's deed within 15 days. Cal. Civ. Code § 2924h(c). Here, title technically transferred even without recordation of a trustee's deed on sale.

Nonetheless, the bankruptcy court could appropriately determine that Appellees decided to rescind within an hour of the sale and took all appropriate action in connection with this decision. Section 2924h(c) provides that a "sale is subject to an automatic rescission for a failure of consideration . . . ." All the trustee is required to do in the event of failed

- 10 -

consideration, is to send a notice of rescission to the "last and highest bidder" whose consideration failed. Cal. Civ. Code § 2924h(c). Notice to the owner of the property subject to foreclosure is not required.

When the foreclosing party's credit bid is the highest bid, the determination that a credit bid was ineffective given the pendency of the automatic stay is equivalent to a failure of a third party bidder to timely tender funds; debt is not repaid and the foreclosure is not finalized. The California foreclosure statutes do not require any formal notice of rescission in this circumstance. Again, notice to the property owner, here the Debtor, is not required, and Appellants provided evidence that they recognized and internally communicated the need for rescission promptly.

Thus, under California's comprehensive foreclosure statute, nothing else was required under the circumstances. There certainly are consequences once the sale is rescinded: a new notice of sale must issue and a new reinstatement period arises. See Cal. Civ. Code § 2924c. Debtor offered no evidence, however, that Appellees took any positions inconsistent with their internal decision to rescind the ineffective sale.[6] Therefore, the record supports the bankruptcy court's finding that Appellees did not further violate the stay by failing to promptly remedy the wrongful foreclosure.

---

[6] After completion of briefing on this appeal, Nationstar sought authority from the bankruptcy court to proceed to notice a new foreclosure sale, by way of a motion for relief from stay filed in October 2013. At oral argument, the parties' counsel conceded that Appellees obtained relief from stay but have not as yet issued a new notice of sale.

The bankruptcy court also found that Debtor failed to provide any evidence that would support holding either Nationstar or Quality responsible for the allegedly numerous telephone calls and correspondence from businesses purporting to provide post-foreclosure assistance. The one document submitted in evidence, on its face, contains no reference to either Nationstar or Quality, and Debtor offered no evidence from which the bankruptcy court could reasonably attribute it to either appellee. Therefore, on this record, we conclude that the bankruptcy court did not commit error.

**C.    Even if the violation was willful, Debtor suffered no damages as a result thereof.**

As the bankruptcy court also found, even if it determined that Appellees had adequate notice before the foreclosure sale, Debtor failed to provide evidence of damages suffered during the 49 minutes that elapsed between the time of sale and Quality's determination to rescind the sale. And the record reflects that no trustee's deed upon sale ever issued. The stay violation was short-lived, and Appellees promptly remedied the wrongful foreclosure on their own. Debtor failed to establish any actual damages. Therefore, even if the notice was deemed to be adequate, the bankruptcy court did not abuse its discretion when it denied Debtor's Sanctions Motion.

### CONCLUSION

For the reasons set forth above, we AFFIRM the bankruptcy court.